**GALVESTON, H. & S. A. RY. CO. v. MALLOTT.  (No. 9102.)**

Court of Civil Appeals of Texas. Galveston. March 15, 1928.

Rehearing Denied May 17, 1928.

1. Action ⟨key⟩65—Cause of action for injuries from violation of ordinance regulating speed of trains held not affected by subsequent repeal of ordinance.

Where plaintiff, injured in crossing accident, had cause of action against railroad for violation of city ordinance making it a penal offense to operate locomotives at greater speed than 12 miles an hour in the city, subsequent repeal of ordinance by dissolution of city charter and merger of city with another city *held* not to defeat plaintiff's right of action; such right having previously vested.

2. Corporations ⟨key⟩423 — Corporation is responsible for injury caused by agent's wrongful act, committed within scope of employment, though forbidden by corporation.

A corporation is responsible to one injured by the wrongful act of its agent, even though such act was expressly forbidden by corporation, if in the commission thereof agent was acting within scope of his employment.

3. Master and servant ⟨key⟩354—Injured employee may, at request of indemnifying party, sue third person causing injury (Workmen's Compensation Act [Vernon's Ann. Civ. St. 1925, arts. 8306–8309]).

Under Workmen's Compensation Act (Vernon's Ann. Civ. St. 1925, arts. 8306–8309), injured employee is real beneficiary in cases where damages exceed amount received by employee from indemnifying association, and in such case injured employee may, at request of indemnifying party, sue third person, causing injury.

**4. Parties** ⚙️76(2)—**Right of one of several joint owners of cause of action to maintain suit can be questioned only by plea in abatement.**

Where suit is brought by only one of two or more joint owners of cause of action, his right to maintain it can be questioned only by plea in abatement.

**5. Trial** ⚙️352(1)—**Special issue whether train was operated at excessive speed held not objectionable as authorizing affirmative answer on finding that excessive speed occurred in any part of city.**

In action arising out of railroad crossing collision, submission of special issue, whether train was operated through city and across street where accident occurred in violation of city ordinance limiting speed of locomotives to 12 miles an hour through the city, *held* not objectionable as permitting jury to answer question in affirmative if they found that locomotive was operated through any part of city in violation of ordinance.

**6. Appeal and error** ⚙️1071(3)—**Where evidence justified findings that excessive speed of train and failure to ring bell caused collision, it would be immaterial that findings on other issues were against weight of evidence.**

Where there was ample evidence to sustain findings of jury that operatives in charge of locomotive colliding with plaintiff's automobile violated city ordinance regulating speed of trains in city and did not ring engine bell as required by law, and that such acts were proximate cause of collision, fact that findings on other issues of negligence may have been against weight of evidence would be immaterial, and would not justify reversal of judgment for plaintiff.

**7. Appeal and error** ⚙️742(2)—**Proposition relating to assignments of error involving unrelated matters held multifarious.**

Proposition relating to assignments of error involving unrelated matters *held* multifarious.

**8. Trial** ⚙️260(8)—**Refusal of defendant's requested charges as to negligence, substantially covered by charges given, was not error.**

Where charge of trial court fairly submitted all issues relative to questions of negligence and contributory negligence, refusal of defendant's special requested charges substantially covered thereby was not error.

**9. Trial** ⚙️251(8)—**To entitle defendant to special charge grouping facts supporting defense of contributory negligence, they must have been pleaded.**

To entitle defendant to special charge grouping facts constituting grounds of defense of contributory negligence, they must have been pleaded.

**10. Trial** ⚙️350(2)—**Special issues should be framed to evoke finding on ultimate facts only.**

Special issues should be so framed as to evoke a finding on ultimate fact issues, and a finding of merely evidential facts should never

be required, since such a course involves danger of ambiguity and contradictions.

**11. Appeal and error** ⚙️204(1), 544(1)—**Ruling admitting evidence is not reviewable on appeal, in absence of objection or bill of exception.**

In absence of specific objection to admission of testimony or bill of exceptions reserved to its admission, ruling admitting evidence is not reviewable on appeal.

**12. Damages** ⚙️172(1)—**Permitting plaintiff in personal injury action to testify as to his approximate earning capacity held not error, where he worked on commission basis.**

Where plaintiff in personal injury action testified that his earnings depended on amount of business he obtained for laundry for which he was employed on commission basis, and that some weeks it would be $53 and other weeks $40, but that it averaged about $45 per week, court did not err in permitting him to testify as to the approximate amount of his weekly earning capacity, against objection that he could have given his actual weekly earnings.

**13. Evidence** ⚙️492—**Witnesses** ⚙️372(2)—**Permitting plaintiff to give estimate of speed of train, and permitting plaintiff's counsel to ask engine fireman if he would not lose job if he testified no warning was given, held not error.**

In action for injuries sustained in railroad crossing collision, permitting plaintiff to give his estimate of speed of train, and permitting plaintiff's counsel to ask engine fireman if he did not know that, should he testify that whistle was not blown and bell not rung, he would lose his job, and in requiring answer to such inquiry, *held* not error.

**14. Jury** ⚙️37—**Remittitur required as condition to overruling defendant's motion for new trial held not to deprive defendant of constitutional right to jury trial (Rev. St. 1925, art. 2227).**

Remittitur required by trial court as condition to overruling defendant's motion for new trial after verdict for plaintiff, as authorized by Rev. St. 1925, art. 2227, *held* not to deprive defendant of his constitutional right to just and fair trial by jury.

**15. Damages** ⚙️130(1)—**$20,000 to plaintiff having life expectancy of 34 years, of which $14,700 was for injuries decreasing his earning capacity $60 a month, held not excessive.**

Award of $20,000 damages, of which $5,300 was for loss of time resulting from injury and medical and hospital expenses, leaving $14,700 for personal injuries to plaintiff having life expectancy of 34 years, and whose earning capacity was decreased $60 per month by his injury, *held* not excessive.

**16. Railroads** ⚙️350(16)—**Truck driver's contributory negligence in driving on railroad tracks at crossing held, under evidence, question for jury.**

In action for injuries sustained in collision between plaintiff's motortruck and train at crossing, question of plaintiff's contributory negligence in approaching crossing and going

thereon without looking *held*, under evidence, for jury.

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by S. C. Mallott against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood and Garrison & Watson, all of Houston, for appellant.

King & Wood, of Houston, for appellee.

LANE, J. S. C. Mallott brought this suit against the Galveston, Harrisburg & San Antonio Railway Company to recover a total sum of $42,800 for damages which he alleged he suffered by reason of personal injuries inflicted through negligent acts of the defendant. The items were as follows: $25,000 for injuries from which he suffered great pain, and by reason of which he was disfigured and crippled for life; $2,000 for loss of ten months' time; $2,500 for doctors', nurses', hospital, and medical bills; $10,000 for destruction of his capacity to increase his present earning ability; and $3,300 for the benefit of the Lumberman's Reciprocal Association.

He alleged that at the time of his injuries he was an employee of the Burkhart Laundry & Dye Works, a subscriber under the Workmen's Compensation Act of the state of Texas (Vernon's Ann. Civ. St. 1925, arts. 8306–8309), which held a policy issued to it by the Lumberman's Reciprocal Association whereby said association indemnified said laundry works against loss by reason of injuries which might be suffered by its employees; that since said injuries certain bills, necessarily incurred by reason of his injuries, were paid by said association in the sum of $3,300. He prayed for judgment for his damages and for $3,300 for the use and benefit of the association.

The acts of negligence alleged were as follows:

"(1) That the defendant railroad company violated the city ordinances of the city of Magnolia Park by running its trains through the city of Magnolia Park over Canal street in excess of 12 miles per hour.

"(2) In operating said locomotive and train through a thickly settled portion of the city of Magnolia Park, and over and across said street intersection, at the high, dangerous, unlawful, and excessive rate of speed of 30 miles or more per hour.

"(3) In failing to slacken said speed and slow down said train as the same approached said crossing and intersection so as to have said engine and train under control, that same could have been quickly and instantly stopped upon discovering one attempting to cross said street.

"(4) In permitting its right of way fence immediately to plaintiff's right, as he approached said crossing, to become matted and covered with vines, shrubbery and weeds, so as to obstruct plaintiff's view of the approaching train.

"(5) In failing to continuously ring the bell of the locomotive of said train as the same passed through the city of Magnolia Park and as it approached said crossing.

"(6) In failing to sound the whistle on the locomotive of said train for a distance of 80 rods before said train approached and crossed over said crossing.

"(7) In failing, in view of the frequent use of said Canal street, to maintain a flagman or provide some signal device at said crossing so as to warn people of the approaching train.

"(8) That the operators of the train, including the engineer and fireman, after the peril of the plaintiff was discovered, failed to exercise ordinary care to stop or slacken the speed of said train and prevent the accident.

\* \* \* \* \* \*

"That defendant had permitted its right of way fence, extending up to the cattle guard near said crossing and between the crossing and Canal street, to become matted and covered with vines, shrubbery, and weeds which extended several feet high, so that, after he had passed the other obstructions to his right, as above alleged, his view in the direction of the on-coming train was obstructed by the fence, fence posts, vines, shrubbery, and weeds, which defendant had permitted to grow upon and mat and cover same."

The defendant answered by general demurrer, general denial, and specially pleaded that plaintiff was guilty of contributory negligence, in that he was running his truck at an excessive rate of speed, in violation of the state statute, that, as he approached said crossing, he did not look or listen for an approaching train at a place where the train could have been seen, and that the view of the plaintiff was unobstructed at a distance of more than 60 feet from the crossing.

In answer to special issues, the jury found that defendant was guilty of all the acts of negligence alleged by the plaintiff, and that each of such acts of negligence was the proximate cause of the plaintiff's injuries. They found in favor of defendant upon the issue of discovered peril, that the plaintiff was not guilty of contributory negligence, and that he suffered by reason of his injuries damages in the total sum of $29,780.00, if paid now.

Upon the verdict of the jury judgment was rendered in favor of the plaintiff for the sum of $29,780, which was to include the sum of $3,300 recovered for the benefit of the Lumberman's Reciprocal Association.

Defendant in due time filed and presented its motion for a new trial, and among other things complained of the verdict and judgment as being excessive.

Upon hearing of the motion for new trial, it was agreed by counsel that the jury arrived at their verdict, as to the sum awarded as damages, in the following manner, as stated by them:

"(1) We allowed the plaintiff the sum of $2,000 damages for time lost.

"(2) We allowed the plaintiff the sum of $3,300 for damages for medical and hospital bills.

"(3) That the life expectancy of the plaintiff

was 34 years; that the plaintiff's earning capacity was impaired and diminished at the rate of $60 per month, making a total of $750 per year; that $750 a year multiplied by 34 amounts to $24,480; that this added to the amount of $5,300 makes $29,780.

"While we made no separate allowance for his mental anguish, pain, and suffering, as such, we had it in mind, and, when we totaled the findings and the amount thereof, it was decided same was sufficient to cover lost time, expenses, his diminished earning capacity, and his mental anguish, pain, and suffering."

After the close of the evidence upon the motion, the court announced to counsel for the plaintiff that, unless a remittitur of $9,780 was filed, he would grant the motion for a new trial; whereupon, such remittitur was filed, the motion overruled, and judgment was rendered for the plaintiff for $20,000 only. The defendant has appealed.

At the time the accident involved in this suit occurred, the city of Magnolia Park had in force and effect an ordinance making it a penal offense for any person to permit or suffer any locomotive or engine to run within its limits at a greater rate of speed than 12 miles per hour. The crossing at which the accident occurred was in said city. After the accident, and before the trial of the cause, Magnolia Park dissolved its charter, and the territory formerly composing it became a part of the city of Houston, and was a part of said city at the time of the trial of this cause. There was testimony showing that the train which caused the plaintiff's injuries was, at such time, running at a rate of speed in excess of 12 miles per hour, in violation of said ordinance. The ordinance was introduced in evidence, over the objection of the defendant.

[1] By its propositions 1 and 2, appellant insists that the court erred in permitting the ordinance to be introduced in evidence, because, first, such ordinance had been repealed before the trial of this cause, and, being a penal ordinance, no penalty for its violation could be enforced under its provisions after its repeal; and, second, "negligence of the engineer in charge of a locomotive in violating said ordinance would not render the defendant company liable unless the company, through its duly authorized agent, authorized or permitted the engineer to run a locomotive in violation of the said ordinance. The ordinance being a penal statute, must be strictly construed, and a violation of the same by the engineer would not bind the appellant unless the violation of the ordinance was either permitted or authorized by the officers of appellant."

There is no merit in these contentions. The question of the infliction of a penalty for the violation of the ordinance is not a matter involved here. At the time of the accident, appellant was guilty of actionable negligence by reason of the violation of a valid ordinance, and the subsequent repeal thereof would not deprive one of his right of action, if he suffered injury by reason of appellant's negligent acts. When, by virtue of an existing law, the plaintiff may show an existing state of facts which would entitle him to a recovery, the right to make such showing becomes a right fixed and vested and cannot be taken away by a direct or indirect repeal of the law in existence at the time of the infliction of injuries forming the basis of the plaintiff's cause of action. Mellinger v. Mayor of the City of Houston, 68 Tex. 37, 3 S. W. 249; I. & G. N. R. Co. v. Edmundson (Tex. Com. App.) 222 S. W. 181; Gibbons v. Ry. Co., 263 Ill. 266, 104 N. E. 1063.

[2] It is well settled, if not an elementary proposition, that a corporation is responsible to a person injured by a wrongful act of its agent, even though such act was expressly forbidden by the corporation, if in the commission of such act the agent was acting within the scope of his employment. Houston Printing Co. v. Jones (Tex. Civ. App.) 282 S. W. 855, at page 859; Perkins Bros. Co. v. Anderson (Tex. Civ. App.) 155 S. W. 557; T. & N. O. R. Co. v. Parsons (Tex. Civ. App.) 109 S. W. 240; Webb v. Wessell (Tex. Civ. App.) 178 S. W. 696.

[3] In its third, fourth, and fifth propositions appellant insists that, in the absence of allegations and proof that the Lumberman's Reciprocal Association had refused to bring this suit for plaintiff's benefit, plaintiff could not bring the same for himself and for the use and benefit of said association. The contention of appellant is overruled. The Texas Workman's Compensation Act, the provisions of which are invoked by appellant in support of its propositions, evidently contemplates that the injured employee is the real beneficiary in cases where the damages exceed, as may often happen, the amount received by the employee from the indemnifying association. Galveston-Houston Electric Co. v. Reinle (Tex. Civ. App.) 264 S. W. 783, and authorities therein cited; Jackson v. West, 22 Tex. Civ. App. 483, 54 S. W. 297. Many authorities hold that in equity the real beneficiary may always be permitted to sue where the party having the mere legal title or right fails or refuses to do so. See Trustees, etc., of Bowdoin College v. Merritt (C. C.) 54 F. 55, and cases therein cited.

[4] Such being the rule, it should not be held that appellee, in the present case, should not be permitted to bring the suit, as he did, at the request of the indemnifying party. Another reason why the contention should be overruled is that appellee sued and by his petition disclosed the fact that he was suing for himself and for the use and benefit of the indemnifying association, and alleged that the association had consented and authorized him to prosecute the suit for its benefit, in so far as its interests were involved. No plea in abatement was filed by appellant; it did

not in any manner of plea assert that appellee was not entitled to recover in the capacity in which he sued. Where a suit is brought, as in the present case, by only one of two or more joint owners of a cause of action, the right of the party bringing such suit to maintain the same can be questioned only by a plea in abatement. Fant v. Farrier Bros. (Tex Civ. App.) 253 S. W. 955; Western Weighing & Inspection Bureau v. Armstrong, (Tex. Civ. App.) 281 S. W. 245.

[5] Special issue No. 1 submitted by the court reads as follows:

"Was the train in question operated through the city of Magnolia Park and across Canal avenue, on the occasion in question, in violation of the city ordinance in evidence before you limiting the speed of locomotive engines to twelve (12) miles an hour through said city?"

Complaint is made of this charge by appellant's proposition 6, wherein it is insisted that the jury could have answered the question in the affirmative if they had found that the locomotive was operated through any part of Magnolia Park in violation of the ordinance. We overrule this contention. The charge is not reasonably subject to the interpretation sought to be made of it by appellant. The jury could not have made an affirmative answer to the question unless they found that the locomotive was running in violation of the ordinance as it crossed Canal avenue.

Appellant also complains under his sixth proposition complains of special issues Nos. 2, 3, 10, 11, 14, and 18, and insists that they were framed in such ambiguous, vague and indefinite language as not to clearly submit issues of fact raised by the evidence. We have carefully examined each of the issues complained of and we find that each and all of them submits in unambiguous language issues only which were raised by the evidence. Appellant's complaints thereof are untenable.

By the seventh proposition, the contention is made that the court erroneously submitted the issue of negligence and contributory negligence in general terms in such manner as to enable the jury to take into consideration facts and circumstances other than the particular facts relative to the issue submitted. The contention is overruled. It could hardly be conceived that a jury of ordinary intelligence, in answering the questions as submitted by the special issues complained of, would or could, in arriving at an answer thereto, take into consideration evidence which had no relevancy whatever to the questions propounded. The form of the issues could not possibly have led the jury into a belief that evidence wholly disconnected with the issue or issues submitted had any bearing on such issues.

[6] By the eighth proposition the contention is made that the verdict of the jury was so against the great weight and preponderance of the evidence as to have made it the duty of the trial court to set such verdict aside upon appellant's motion for a new trial, and to impose upon this court the duty to reverse the judgment rendered upon such verdict. The contention cannot be sustained. We think there was ample evidence to sustain the findings of the jury that appellant's operatives in charge of the locomotive which collided with the automobile of appellee, in violation of a valid and subsisting city ordinance of the city of Magnolia Park, ran said locomotive in and across Canal avenue in said city, where the accident occurred, at a rate of speed greater than 12 miles per hour, and that they did not ring the engine bell as required by law, and that such acts were under existing or "attending" circumstances, negligence and the proximate cause of the collision. Upon such findings alone the judgment would be supported, unless defeated by proof of contributory negligence pleaded by defendant, and therefore, if the findings on other issues of negligence were against the great weight and preponderance of the evidence, they would become immaterial, and would not justify a reversal of the judgment. Railway Co. v. Kopinitsch (Tex. Civ. App.) 282 S. W. at page 887, § 10.

[7] Appellant's ninth proposition is as follows:

"Where the issue of contributory negligence is raised both by the pleadings and the evidence, the defendant is entitled to an affirmative presentation of the facts which might have constituted a defense for the plaintiff's cause of action."

Under this proposition appellant states that it is germane to assignments 4 and 35. Assignment 4 complains of the refusal of the court to submit the question as to whether appellee "looked and listened for the approaching train as he approached the crossing, at such time or place that he could have seen same." Assignment No. 35 complains of the refusal to submit appellant's specially requested issue reading as follows:

"Disregarding and eliminating the accident at Canal street crossing, and attending circumstances thereto, you are requested to find this issue: Was the crossing of the G., H. & S. A. Railway Company at Canal street, a peculiar, unusual, or extraordinarily dangerous crossing?"

It is apparent that, while assignment No. 4 may be a basis for proposition 9, assignment 35 presents an entirely different question, and could not in any conceivable way become a basis for such proposition. It is thus made apparent that the proposition is multifarious. We have, however, concluded to consider the same.

[8] Under the head "Argument," appellant makes the contention that the court erred in refusing to submit to the jury its several special requested charges, twenty-five or thirty in number, in that it was entitled and it was its

right to have such issues submitted because they and each of them called for a finding of the jury upon matters of defense raised by the pleadings and evidence.

The court in the charge given instructed the jury that the term "negligence" meant "a want of ordinary care," that the term "ordinary care" meant such care as a person of ordinary prudence would use under the same or similar circumstances, and that the term "contributory negligence" meant an act or omission on the part of the alleged injured party which an ordinarily prudent person would not have done or omitted to do under the same or similar circumstances, and which either alone or concurring with negligence of the defendant becomes a proximate cause of the alleged injuries.

After a careful examination of the charge of the court, we have reached the conclusion that it fairly submitted all the issues relative to the questions of negligence and contributory negligence, and that the court did not err in refusing appellant's special requested charges, many of which were substantially the same as those submitted by the court.

As already shown, the only acts of negligence charged to appellee by the answer of appellant were: (1) That he ran his truck at an excessive rate of speed in violation of the state law; and (2) that as he approached the crossing he failed to look or listen for an approaching train, at a place where it could have been seen.

The issues submitted by the court with reference to the negligent acts charged to appellee were as follows:

"(1) Did the plaintiff, as he approached and attempted to cross the crossing, exercise such care with reference to looking and listening for the train as a person of ordinary prudence would have used under the same or similar circumstances?

"(2) Did the plaintiff, as he approached and attempted to cross the crossing, exercise such care with reference to the rate of speed at which he was traveling at the time as an ordinarily prudent person would have used under the same or similar circumstances?

"(3) Was the plaintiff, as he approached the crossing in question, driving the truck at a rate of speed in excess of 18 miles an hour?

"(4) Did the plaintiff discover the approaching train in time, in the exercise of ordinary care, to have stopped his car and avoid the collision?"

It seems to us that these questions were sufficient submissions of all the issues raised by the plea of appellant relative to contributory negligence, and therefore the court did not err in refusing any special requested charges relative to that subject.

[9] In M., K. & T. R. Co. v. Parker, 20 Tex. Civ. App. 470, 49 S. W. 717, it was held that, before a party is entitled to a charge grouping the evidence, he must specify and group the facts in his plea.

In Railway Co. v. Hagood, 21 Tex. Civ. App.

442, 52 S. W. 574, 575, the defendants specially answered as follows:

"And for special answer herein, if necessary, they say that said plaintiff ought not to recover herein, for the reason that at the time of and just before the accident the deceased was himself guilty of negligence which directly and proximately caused and contributed to the accident."

Upon trial, defendants offered evidence tending to show specific acts of negligence on the part of the plaintiff. The court instructed the jury that, if they should find that defendant was negligent, and should also find that the deceased, for whose death the suit was brought, was also guilty of negligence which directly or proximately caused or contributed to the accident, the plaintiff could not recover. The defendants requested the court to charge the jury (1) that, if they should find from the evidence that the deceased stood upon the railway track and was there struck and killed, and they should further find that a reasonably prudent person, in the exercise of ordinary care, would not have so stood on the railroad track, the plaintiff could not recover. They also asked other charges relative to other specific acts of the deceased, shown by the evidence but not pleaded. These requested charges were refused, and on appeal the defendant complained of such refusal. In deciding the issue, the court said:

"It is thus seen that the defense of contributory negligence was submitted to the jury quite as specifically as it was pleaded."

In M., K. & T. R. Co. v. Parker, 20 Tex. Civ. App. 470, 50 S. W. 606 (writ of error denied), the court said:

"That, in order to entitle the defendant to a special charge grouping the facts constituting the grounds of the defense of contributory negligence, they must have been pleaded."

See Fort Worth & D. C. R. Co. v. Morrow (Tex. Civ. App.) 235 S. W. at page 668, col. 2.

We think that a careful reading of the case of Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517, will disclose that the court rendering the decision did not intend to depart from the holding of the cases above cited.

[10] In connection with the discussion of the ninth proposition, we deem it proper to say that the courts have condemned the practice of submitting a multiplicity of questions to a jury to be answered separately as upon special issues. We think questions should be so framed as to evoke a finding upon ultimate fact issues, and a finding of merely evidential facts should never be required. Such a course invariably involves danger of ambiguity and contradictions. Cushman v. Masterson (Tex. Civ. App.) 64 S. W. 1033; Fox v. Hotel Co., supra; Fort Worth & D. C. Co. v. Morrow (Tex. Civ. App.) 235 S. W. 664.

For the reasons pointed out, the contention made by appellant under its ninth proposition cannot be sustained.

[11, 12] By its tenth proposition, the contention is made that the court erred in permitting the plaintiff to testify as to the proximate amount of his earning capacity, because he could have given his actual weekly earnings. No specific objection was made upon the trial to such testimony. No bill of exception was reserved to its admission, and therefore the proposition is not entitled to a consideration, but, if it was entitled to consideration, there is no merit in such contention. The plaintiff testified that before the accident he was earning about $45 per week; that his earnings for the several weeks depended on the amount of business he got for the laundry; that his pay was fixed on a commission basis; that some weeks it would be $53, some weeks $54 and other weeks $40, but it averaged about $45 per week.

[13] By the eleventh proposition, contention is made that the court erred in permitting the plaintiff to give his estimate of the speed of the train, and by the twelfth that the court erred in permitting counsel for the plaintiff to ask the fireman of the engine which collided with the plaintiff if he did not know that, should he testify that the whistle was not blown and the bell not rung, he would lose his job, and in requiring an answer to such inquiry. Notwithstanding the fact that neither the transcript nor the statement of facts disclose the nature of the objection interposed to the admission of the testimony complained of, by bill of exception or otherwise, we have carefully considered the two propositions, and have overruled both of them as without merit.

[14] By the thirteenth proposition, it is contended that appellant was entitled to a trial by a fair and impartial jury, and that it is shown by the evidence adduced on the motion for new trial that it had no such fair and impartial trial, as it was shown that the verdict was "grossly outrageous and excessive," and was· arrived at by the jury in the following manner: They allowed the plaintiff $2,000 for lost time and $5,300 for medical and hospital bills; found that plaintiff's expectancy was 34 years, that his earning capacity was, by his injuries, impaired and diminished $720 per year, or $24,480 for the 34 years, that upon such showing it was the duty of the court to grant the defendant a new trial, and that his right of a fair trial by jury was not met by the plaintiff in remitting the sum of $9,870 as required by the court as a condition upon which the motion for new trial would be overruled.

Under the above proposition, appellant argues that the Constitution provides that the parties to a suit are entitled to a trial by jury, which means that he is entitled to have a jury pass on all issues of fact which involve the question of the sum or sums to be awarded where the suit is one for uncertain damages, and therefore the remittitur filed by the plaintiff did not have the effect to give to the defendant a fair trial by the jury, but the final establishing of the amount to be recovered by the plaintiff was upon a finding of the trial judge and not by the jury; that such action is in violation of appellant's constitutional right; that such right cannot be taken away by a legislative enactment.

It may be conceded that the verdict of the jury fixing the recovery at the sum of $29,-870 was excessive, but we are not prepared to hold that the excess so assessed necessarily indicated passion and prejudice on the part of the jury, nor that the court was without authority to render judgment for $20,000 upon the filing by the plaintiff of the remittitur of $9,870, nor that the statute (article 2227 of the Revised Civil Statutes of 1925), which provides that a party in whose favor a judgment has been rendered, may remit any part thereof and may have judgment rendered for the balance not so remitted, is unconstitutional, nor that appellant was, by the rendition of the judgment for $20,000, deprived of the constitutional right of trial by jury. T. & N. O. R. Co. v. Syfan, 91 Tex. 562, 44 S. W. 1064; Wilson v. Freeman, 108 Tex. 121, 185 S. W. 993, Ann. Cas. 1918D, 1203; Railway Co. v. Ernest (Tex. Civ. App.) 210 S. W. 603; I. & G. N. R. Co. v. Cooper (Tex. Com. App.) 1 S. W.(2d) 578.

In T. & N. O. Ry. Co. v. Syfan, Judge Brown, speaking for our Supreme Court, after reviewing conflicting opinions on the subject we are now discussing, said:

"The weight of authority sustains a doctrine contrary to that heretofore asserted by our courts, and accords to the court trying the case the discretion to suggest a remittitur of a stated amount, as a condition upon which a motion for new trial will be overruled or a judgment affirmed, when there is no other error and the court finds that the verdict of the jury is for an excessive amount, and upon the plaintiff's accepting the terms and entering the remittitur the court may overrule the motion for rehearing or affirm the judgment, the error being cured by the remittitur"—many cases being cited in support of the holding made.

[15] While the jury in their statement of the manner in which they arrived at the amount awarded stated that they had in mind allowance for mental anguish, pain, and suffering of the plaintiff, the writer is of opinion that the figure they gave clearly shows that they did not in fact award any part of the amount named for anguish, pain, or suffering, but that such award was based upon their finding that the plaintiff had lost time of the value of $2,000 from the time of his injuries to the date of trial, that he had paid the sum of $3,300 for medicines and hospital bills, and that his earning capacity for the 34 years of life expectancy was $720 per year, or a total of $24,480, a grand total of $29,780. But we see nothing in the manner used in arriving at the verdict which would entitle appellant to a reversal of the judgment

rendered, for, had the jury in fact taken into consideration mental anguish, pain, and 'suffering, and made an allowance therefor, the award might have been larger than the sum actually awarded. But the question is: Was the judgment for $20,000 so excessive as to require either a reversal of the same or a further remittitur? We think not. Evidently appellee, if entitled to recover at all, was entitled to a recovery of the sum he had lost by reason of his injuries up to the time of trial, which the jury found to be $2,000, and also the sum of $3,300, which they found was incurred by him for medicines and hospital services, a total of $5,300. When said sum of $5,300 is deducted from the judgment of $20,-000, it would leave a balance of only $14,700 as remuneration for his loss of earning capacity of $720 per year for 34 years from the date of judgment. We are not prepared to hold that the judgment as rendered was excessive.

What we have said relative to the thirteenth proposition is applicable to and disposes of the contention made by the fifteenth proposition.

We overrule the fourteenth proposition without comment. Eddy v. Lowry (Tex. Civ. App.) 24 S. W. 1076; Ry. Co. v. Marshall, 57 Tex. Civ. App. 538, 122 S. W. 946.

[16] By the sixteenth proposition the appellant asserts that the finding of the jury that appellee was not guilty of contributory negligence was contrary to the weight and preponderance of the evidence, and in fact was against all the evidence, and therefore the court erred in not instructing a verdict in its favor.

We overrule the contention. The plaintiff testified that he approached the crossing at a speed of about 10 miles per hour, but slowed down just before reaching the railroad track to about 3 or 4 miles per hour; that as he approached the crossing, and when in about 100 feet of the railroad, he looked to the right and saw no train, and then looked to the left and then straight ahead, and that he did not see the train until it reached the cattle guard at the crossing. Testifying further, he said that after he passed the corner of the two-story house there was nothing to obstruct his view or prevent his seeing the train except a fence covered with honeysuckle vines which was about 6 feet high; that he had passed the corner of the two-story house when he looked to the right; that he looked to the right as he got to the corner; that he was far enough past the corner for him to see.

The testimony of the plaintiff was ample evidence to support a finding that plaintiff looked to see if a train was approaching the crossing from the right at a time and place when he could reasonably have expected to see it, if approaching, and to support a further conclusion that plaintiff, having so looked and satisfied himself that no train

approaching from the right was in sight, was not in want of due care for his own safety in then looking to the left and not again looking to the right before going upon the crossing. The question as to whether the plaintiff was in the exercise of due care for his own safety as he approached and went upon the crossing was, under the facts of this case, one for the determination of the jury, and one which was decided in favor of the plaintiff. Whether a reasonably prudent person would have acted differently from the plaintiff, under similar surroundings or circumstances, was for the jury to determine. Freeman v. G., H. & S. A. R. Co. (Tex. Com. App.) 285 S. W. 607.

Having reached the conclusion above expressed, it becomes our duty to affirm the judgment, and it is so ordered.

Affirmed.