## Cook & Bernheimer Company et al. v. R. W. Hunt.

Decided February 2, 1898.

**1. Deed of Trust—Power of Substitution—Validity.**

The makers of a trust deed to secure certain creditors may reserve the right and power to appoint a substitute in case of the trustee's death or failure to act; and where the trustee appointed has taken possession of the property and the beneficiaries have accepted, other creditors are not defrauded by reason of the reservation of such power to the makers, no occasion having arisen for its exercise.

**2. Same—As Affecting Individual and Firm Property.**

If the reservation in a deed of trust covering both firm property and the individual property of a member of the firm, of a power to the grantors, "or either of them," to substitute a new trustee in case of the failure of the original appointee to act, invalidates it as to the individual property as against unsecured creditors, it does not affect it so far as the firm property is concerned.

**3. Same—Prior Deed—Unsecured Creditors.**

Unsecured creditors can not question the validity of a deed of trust given to secure other creditors on the ground that a prior deed had been executed, and the

fact of such prior deed will not render the junior one void, but the latter will be treated as a subsequent mortgage on the property.

APPEAL from Hill. Tried below before Hon. J. M. HALL.

*Vaughan & Sullenberger, R. T. Jones,* and *F. R. Works,* for appellant.

*McKinnon & Carlton* and *Smith & Phillips,* for appellee.

NEILL, ASSOCIATE JUSTICE.—The origin and nature of this case will fully appear from our conclusions of fact. It is sufficient to say here that it is a proceeding in accordance with title 107, Revised Statutes 1895, for the trial of right of property levied on as the property of Lewis Bros. by virtue of writs of attachment issued in favor of appellants, which was claimed by the appellee, and that upon the trial of the issues formed judgment was rendered in favor of the claimant.

*Conclusions of Fact.*—Lewis Bros., a firm composed of M. and Sol Lewis, on and prior to the 8th day of October, 1895, doing business under the firm name of Lewis Bros., in Hillsboro, Hill County, Texas; Waxahachie and Ennis, Ellis County; Mexia, Limestone County; and Bryan, Brazos County, Texas, executed a deed of trust or chattel mortgage to J. Baldridge, trustee, at Ennis, Ellis County, Texas, on the 8th day of October, 1895, by which they conveyed all their personal property at said five places of business in trust to pay certain of their preferred creditors, the creditors and the several amounts due them being stated in the instrument. M. and Sol Lewis were both in Ennis on the morning of October 8, 1895, and consulted with their attorney relative to the execution of the deed of trust, and agreed together upon the execution of the same. It is stated in the body of the instrument that it is intended as a chattel mortgage to secure the payment of the claims and debts therein named and to indemnify the grantors' creditors, indorsers, and sureties stated in said instrument. And it provides that when a sufficient quantity of the goods shall have been sold to pay off and fully discharge the indebtedness enumerated and all necessary expenses incident to the sale of the property, then the remainder of such goods, wares, and merchandise of any portion of the proceeds of sale remaining shall be returned to the grantors. This deed of trust was drawn by Lewis Bros.' attorneys at Ennis, Texas, the home of Sol Lewis, on the evening of October 8, 1895, at from 6 to 8 o'clock, and immediately signed by Sol Lewis, in the firm name of Lewis Bros. It was drawn and executed in quadruplicate in order to be filed in each of the four counties where said places of business were located, and was sent to the county site of each of said four counties for registration in the county clerk's office of said counties by special messengers, and it was filed in the office of the county clerk of Hill County on October 9, 1895, at 9:15 o'clock a. m. J. Baldridge accepted the trust imposed by said deed of trust about 8 o'clock

a. m. October 9, 1895. M. B. Templeton, one of the beneficiaries in this deed of trust, accepted its terms at the time it was executed, which was before the trustee accepted the trust.

M. Lewis, after agreeing to the execution of the deed of trust, returned to his home in Hillsboro, Texas, before it was executed, and on the 8th day of October, 1895, executed in the name of Lewis Bros. to R. W. Hunt, as trustee, a deed of trust conveying to said trustee the stock of goods, wares, and merchandise owned by Lewis Bros. in Hillsboro, Texas, and which included the property involved in this suit, and also a tract of land owned by M. Lewis individually, to secure the payment of the following creditors: Hill County National Bank, of Hillsboro, Texas, note for $2000; another note to Hill County National Bank for $1000; Mrs. L. J. Weltman, of Fort Worth, Texas, note, $1500, open account, $100; A. Derden, $29.45; J. H. Carter, $437.50; Charles Lane, $8; L. P. Garrison, $21.20; R. W. Hunt, $20; John Clark, $24.90; M. S. Cooper & Co., $79.26; M. D. Garlington & Son, $78.13 and $91.15; Waters-Pierce Oil Company, $82.95; Wheeler & LaBryer, $22.04; Jackson & Co., $30.28; another note to Mrs. L. J. Weltman for $1500; Smith & Phillips and McKinnon & Carlton, $750; Stroud—Gibson Grocery Company, $205.44; Stroud Bros., $964.95, in which deed of trust the following provision appears: "It is further specially provided, that should R. W. Hunt die, or from any cause whatever fail or refuse to act, or become disqualified from acting as such trustee that we, or either of us, shall have full power to appoint a substitute in writing, who shall have the same powers as are hereby delegated to the said R. W. Hunt." It is stated in this instrument that it is intended to be and is a mortgage to secure the payment of the debts therein mentioned, and it provided that in the event the debts are paid the instrument is to become null and void, and the property not sold by the trustees shall be returned to the grantors. R. W. Hunt accepted in writing indorsed on the instrument the trust upon the day it was executed, and certain creditors mentioned in the deed of trust accepted its provisions in like manner on the same day. This instrument was filed for registration in the office of the county clerk of Hill County, Texas, on October 8, 1895, at 11:15 o'clock p. m.

Sol Lewis knew nothing of the execution of the deed of trust by M. Lewis to R. W. Hunt, trustee, until about 11 o'clock p. m. of October 8, 1895, and did not positively assent to it until both instruments had been filed for registration in the county clerk's office of Hill County, Texas, but he did assent to and ratify it on October 9, 1895.

The accepting beneficiaries in the deed of trust to R. W. Hunt, nor said trustee at the time of its acceptance, had no actual knowledge of the execution of the deed of trust to Baldridge, except attorneys Smith & Phillips and McKinnon & Carlton. The debts provided for in the deed of trust to Hunt are just and bona fide.

The debts hereinafter mentioned due by Lewis Bros. to appellants,

Cook & Bernheimer Company and Zeigler, are not mentioned or provided for in either deed of trust.

On the 11th day of October, 1895, Lewis Bros. were indebted to appellant, Cook & Bernheimer Company, a corporation, in several sums of money aggregating $3080.70, and on said day said appellant filed suit against Lewis Bros. in the District Court of Hill County, Texas, for said indebtedness, and caused to be issued by the clerk of said court a writ of attachment against said Lewis Bros., which writ was on the 11th day of October, 1895, by the sheriff of Hill County levied upon the property in controversy—it being a part of the property conveyed by the deed of trust by Lewis Bros. to R. W. Hunt.

On the 12th day of October, 1895, the appellee, R. W. Hunt, filed his claim bond and affidavit claiming title to all the property levied upon by said writ of attachment in favor of Cook & Bernheimer Company.

On the same day Schmidt & Zeigler, a firm composed of W. B. Schmidt and F. M. Zeigler, who are interveners in this cause, filed suit in the District Court of Hill County, Texas, against Lewis Bros. and caused to be issued a writ of attachment, which was on said day levied upon a part of the same goods seized under the writ of the other appellant, and claimed by said Hunt after said property had been delivered into the possession of said Hunt under his claim bond and affidavit, which levy was made by giving due notice to Hunt, as in such cases provided by statute.

On the 12th day of March, 1896, Cook & Bernheimer Company recovered judgment in their said suit against Lewis Bros. for the amount of its debt sued on, together with a forceclosure of its attachment lien upon all of said property levied upon by the writ as before stated, subject to the proceedings to be had in this cause.

On the 16th day of March, 1896, interveners, Schmidt & Zeigler, recovered judgment against Lewis Bros. in the District Court of Hill County, Texas, for the sum of $1135.41, interest and costs of suit, with a foreclosure of their attachment lien upon the property levied upon by virtue of their attachment, subject to Cook & Bernheimer Company's lien and proceedings to be had in this cause. The value of the property in controversy was assessed by the sheriff at $4664.69.

J. Baldridge, trustee in the deed of trust executed at Ennis, never took possession of or claimed by virtue of the instrument any of the property embraced in the deed of trust to Hunt, nor did the beneficiaries in the Baldridge deed of trust ever assert any lien by virtue thereof on said property in Hillsboro.

When the deeds of trust were executed, Lewis Bros., if not insolvent, were in failing circumstances.

Immediately after the execution of the deed of trust to R. W. Hunt said trustee took possession of the property described therein, by virtue of said instrument and was in possession of it when the writs of attachment, sued out by appellant, were levied upon the same.

The value of the property conveyed to Hunt did not exceed the amount of the indebtedness secured by the instrument.

Appellant had no lien of any character upon the property at any time prior to the levy of their attachment.

*Conclusions of Law.*—It is contended by appellants that the deed of trust made by Lewis Bros. to R. W. Hunt is void for the following reasons, viz:

1. Because the following provision in said instrument—"It is further specially provided that should R. W. Hunt die or from any cause whatever fail or refuse to act or become disqualified from acting as such trustee, then we or either of us shall have full power to appoint a substitute in writing, who shall have the same power as herein delegated to R. W. Hunt"—gave the appellants an unauthorized control and authority over the property by said instrument conveyed, and had the effect to hinder and delay appellants and their creditors in the collection of their debts.

2. Because said provision reserves to Lewis Bros. the power of controlling and declaring one of the uses of said instrument, and places it in their power to control the property therein conveyed, so as to hinder and delay their creditors in the collection of their debts.

3. Because said clause reserves to Sol Lewis the right and power to appoint a substitute trustee over the individual property of M. Lewis, said instrument being executed by Lewis Bros. and M. Lewis individually, and conveying the firm property of Lewis Bros., located in Hill County, Texas, and also a tract of land in Hill County, belonging to M. Lewis individually.

In our opinion the instrument is not invalid upon any of these grounds.

A person who creates a trust may mold it into whatever form he pleases. He may therefore determine in what manner, in what event, and upon what condition the original trustee, if he fails to act, may be substituted, and he can make any legal provision he may think proper for the continuation and succession of trustees during the continuance of the trust. Perry on Trusts, sec. 287. It is said in Irish v. Antioch College, 18 Northeastern Reporter, 769, that "it is in the power of a person creating and declaring a trust to appoint not only the trustee, but a successor in trust, and prescribe the condition upon which such successor may take the place of the original trustee and execute the trust." Citing Trust Co. v. Fisher, 106 Ill., 189.

In an instrument, like the one under consideration, by which the grantor has not parted with his whole title to the property, the reservation of the power to appoint a trustee in event of the failure of the one named in the instrument to act, is but a declaration of a right exercised by him in the first instance. The grantor, not having parted with his title to the property, has as much interest in seeing that the trust upon which it is conveyed is fairly and faithfully executed as the beneficiaries have; and while it is usual in instruments of this character for the

grantor to authorize the beneficiaries to appoint a substitute trustee in event of the failure of the one first designated to act, no reason is seen why he can not reserve to himself this power usually delegated by him to the beneficiaries.

By reason of the clause complained of in the deed of trust, the grantors can acquire no possession of the property until the creditors for whose benefit it is conveyed are fully satisfied, for it expressly provides that it shall not revert to them until their debts are paid. As such provision does not have the effect to place the property again in their possession or control, it can not be said that any creditor is hindered, delayed, or defrauded. When property is once delivered to the trustee, as in this case, and the security given by the instrument accepted by the beneficiaries, their rights become firmly fixed and can not be divested by the grantor, except upon payment of the debts named. Jackson v. Harvey, 70 Texas, 415; Seal v. Duffy, 45 Am. Dec., 693; Scull v. Reavis, 29 Am. Dec., 694.

As R. W. Hunt, the trustee originally named in the instrument, never refused to act, but took possession of the property and was executing the trust in accordance with the provisions of the instrument when appellant's attachments were levied, there was no authority or occasion for the grantors to exercise the power complained of and appoint a substitute trustee. Until an occasion arose, by reason of Hunt's failure to act, for Lewis Bros. to appoint a substitute trustee, the clause in the instrument authorizing such appointment could not be called in question. It is not contended by appellants that the deed of trust would have been void had it not been for the clause of which they complain. But as no occasion arose for the appointment of the substitute trustee, the power reserved by the grantors to appoint one could not militate against the validity of the instrument. Had Hunt refused to act as trustee and the grantors appointed a substitute who would not faithfully execute the trust in the interest of the beneficiaries, equity would upon a proper application by them remove such trustee, and administer the property conveyed in accordance with the provisions of the instrument. But as appellants had no lien upon the property until after they sued out the attachments, and as its value did not exceed the amount of the indebtedness the instrument was made to secure, they could not have been hindered or delayed in the collection of their debts, by reason of the power reserved by the appellants to appoint a substitute trustee.

The beneficiaries of the trust, the only parties who could have been affected by the provisions, do not complain against the instrument or invoke the statute with reference to fraudulent conveyances, but appellants, who are strangers to the instrument which conveys property not more than sufficient to pay the debt secured by its terms, are the only ones who inveigh against it. The law admits preferences, and as between the parties the deed must be held valid. Jones on Chat. Mort., sec. 345; Babcock v. Booth, 38 Am. Dec., 579.

As is said by Chief Justice Lightfoot in Drug Company v. Rather, 30 Southwestern Reporter, 814: "The clause does not add to or take from the rights of the contracting parties, nor does it affect injuriously the rights of any outside creditor. The debtor can defeat the mortgage at any moment by payment of the debt secured. The outside creditor has his right to levy upon the property subject to the mortgage, and this right is not affected by the clause mentioned. The property was not sufficient to pay the secured debt, and it is difficult to see how appellants have been defrauded, hindered, or delayed in the collection of their debts by reason of this clause."

That the instrument gives Sol Lewis the power to appoint a substitute trustee, in the event of Hunt's failure to act, over the individual property of M. Lewis, does not and can not affect the validity of the conveyance of the firm property, which alone is involved in this suit. It can only affect the tract of land which is the individual property of M. Lewis. Without expressing any opinion as to what would be the effect of the deed upon this individual property had the trustee named in the instrument refused to act, we will say that if it would have been void as to the conveyance of the land, appellants were not prejudiced by it, for in that event they could have subjected the land to their debts unaffected by the deed of trust. But the land is not involved in this suit, and it is unnecessary to speculate upon what would have been the effect of the deed of trust upon it had it been seized under process for appellants' debts.

It is also contended by appellants that the deed of trust to Hunt was void by reason of the prior deed of trust made by the appellants to Baldridge. If the beneficiaries under the Baldridge deed of trust were making this contention, it might be worthy of consideration. But as appellants are not of the beneficiaries, they are in no attitude to avail themselves of this contention.

We will say, however, that if the Hunt deed of trust should be regarded as the junior of the other one, it would not for that reason be void, but would be taken as a subsequent mortgage on the property subject to the prior one.

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Writ of error refused.